Miss Menendez, you may proceed. Thank you, your honors. Good morning. I appreciate the opportunity to present oral argument on behalf of Mr. Graves. I think this case is perhaps a little less complex than the one that went before it. It's a single issue before the court, whether the district court erred in deciding to admit evidence related to an excited utterance or an alleged excited utterance under 8032. I think the parties are pretty much in agreement as to the relevant facts. This is a case where there was an alleged assault at a home in Panema on the Red Lake Indian Reservation. And at the end of the alleged encounters between Mr. Graves and his significant other LK, he left the home firing several shots that apparently alerted the attention of someone within hearing to call 911. It's unclear how much time passed between the shots and the call, but even assuming it's relatively quick, it was approximately 30 minutes before an officer responded to the scene and the conversation that set issue in this brief occurred. This court's case law, as well as the case law from all kinds of sister circuits, highlights that there isn't an absolute right line rule about when an excited utterance comes in, but several factors need to be considered. And it's Mr. Graves' position that in this case, almost every single one of those factors weighs against the admissibility of the statement in question. First of all is the passage of time. Now it's certainly clear that this court has affirmed the admission of excited utterances when even greater than 30 minutes have passed. For instance, in one case where the victim was a nine year old child, it was up to an hour to an hour and 15 minutes. And there are other cases, however, where even a more immediate statement has been found not to be an excited utterance, because evidence pointed to the person's ability to fabricate, like in the DeMars case. Although the child had said very quickly to her mother that she had been abused, they found it wasn't an excited utterance because she had just moments before said something contradictory. The challenge with the excited utterance exception is trying to tie it to its underpinnings. The idea is based on something that I'm not sure social science would continue to support. But it's that in the excitement of a moment, as this court said in DeMars, shock stills the reflective faculties so that somebody doesn't have the time or the inclination to fabricate. And in this case, within the 30 minutes that passed, there was every single opportunity and motive to create or fabricate that undermines the reliability of the statement. First of all, there is no evidence in this case that the victim, LK, was under continuing excitement from the moment of the assault. It is absolutely true that when the officer arrived at her home, she was crying, she was upset, she was angry. She herself testified that that reaction was angry and upset about the fight, but not continually fearful. Not continually under anxiety, that is not what put her in stress. She also attributed some of her continuing crying or new crying when the officer arrived to her pregnancy hormones and that adding to her emotionality. In this case, unlike any of the cases relied on by the government, there is a period of still and calm between the alleged firing of the shots and the assault and the time when the police arrived. This is a case where the record establishes that at a minimum she went back to bed. I described that as going back to sleep. I can't suggest that she was sleeping. But certainly returned to her bedroom, laid down, turned off the lights, and was quiet until the police showed up. So there is that opportunity for reflection. A second important fact here, and this contrasts this case very sharply with the Broon case relied on by the government. Is that LK did not call 911. She wasn't in enough anxiety, fear, apprehension, or stress to pick up the phone and call anyone. Now, Judge Frank did an interesting analysis of the district court saying that if anything, that supported the admissibility because she didn't know that the police were coming. So she wasn't sitting there thinking out what she was going to say. But I think that misses the relevance of not making the 911 call, which is that she wasn't continuously scared. She wasn't continuously under stress. She didn't call for help. She went back to bed. None of the cases relied on by the government have any evidence of that opportunity for calmness. In the Ironshell case, this court has described that the continuing condition must be, quote, such that no reflection or deliberation is possible. And in this case, there was plenty of opportunity for reflection and deliberation. In addition, Your Honor, I'd suggest that in this case, the court should have paid more attention to LK's own characterization of why she made the statement that she made and of her opportunity to fabricate. She said that she was angry about the fight, but that she wasn't continuously upset or under fear. While the district court considered the testimony of the officer on the scene in trying to determine whether she was under a continuing state of excitement, the district court did not consider her own characterization of how she was feeling at the time in deciding whether it fell within the exception. Finally, Your Honor, I'd like to talk briefly about a couple of the cases relied on by the government, because I think they are, although certainly instructive, easily distinguishable. I'd like to start with the Broon case, which I think admittedly is on the closest to all fours with the current case. It's also a case where some victim of alleged domestic violence called the police and said that her significant other had threatened her with a gun. However, there are several things that make the Broon case an excited utterance that don't apply here. First of all, it was a mere passage of ten minutes between the alleged incident and the arrival, or I'm sorry, between the 911 call and the arrival of the officers on the scene. She told almost exactly the same story when she herself made the 911 call, asking for help, reaching out for help, that she then told ten minutes later when the officer arrived. And she was still, she had made the call, she was waiting for the police, and she was sitting at the table crying. There's no evidence of that time of quietude that we see in the present case. And there's strong evidence that she was upset, as indicated by her making the 911 call. In addition, in the Broon case, the 911 call is corroborated by another person's 911 call, a child who was present at the scene who reported something very similar. What would the government's case have looked like without this as evidence? It's our position that the government would not have been able to secure the guilty verdict in this case. It's a close call at best. The government relies very heavily on Mr. Graves' own statement about what happened in the incident. But I think the government relies too much on that. Mr. Graves admitted that they'd had arguments, he admitted that he had a gun, and he admitted that she pushed it away when he raised it up. But there was never any evidence other than her statement that he had pointed it at her, or threatened, other than this hearsay statement, or threatened to harm her with it. And that's why it's such a critical piece of evidence. Also in this case, her testimony and his testimony are very consistent about a lot of what happened. I mean, his statement in the interview. What's different is this alleged excited utterance to the officer who arrived on the scene. So this isn't a case where there's substantial extrinsic evidence supporting this excited utterance. And that's why I think it presents such an important question. How, the district court seemed to make a distinction, sort of, okay, up to this point, it's no longer an excited utterance. How long was that period of her speaking to the officer that counted as the excited utterance for the court? I apologize, I don't have that passage of time at my fingertips. I think that the distinction the district court made was when there was some gathering of evidence and then sitting down and asking formal questions. So the district court did make, I think, a reflective analysis on that point. But it's our position that from the very beginning of the encounter, it's all not covered within the excited utterance exception. I'd also note- Go ahead, Judge Shepard. I'm sorry, go ahead, Your Honor. Judge Shepard. Well, I was just going to ask, you talked about this issue of whether the excitement is continuous. And isn't that only one of the factors that we have set out there to be taken into consideration? Yes, it is one of several factors, Your Honor, but I would suggest that there is not a case that I found where you all held that it was not continuous excitement and still allowed it to apply. So it's almost a prerequisite factor. So in this case, are you contending that the district court did not take into account that factor? I'm saying he gave it the wrong weight or reached an inappropriate conclusion about whether it was continuous excitement. What's the standard of review that we are to apply? Your Honor, I believe that your standard of review is abuse of discretion for the overall evidentiary ruling. I think that probably, and I didn't cite this in my brief, probably the specific factual decisions are clear error. But I would suggest that Your Honors have the exact same ability to review the record that Judge Frank had. This isn't a matter of credibility of determinations. So on abuse of discretion, to agree with you, we would have to find that this evidentiary ruling is outside of the range of choice that was available to the district court. Yes, Your Honor. So that's your argument. Yes, Your Honor. And I would point the court to the Marrowbone case, which is a case where a teenager alleged sexual assault. And among other things, the court considered that the teenager, I think kind of cynical about teenagers, but that the teenager had a proven motive and inclination to fabricate, and plenty of opportunity to do so. I think that is the closest analogy. All right, thank you for your argument. Thank you. Mr. Paulson, we'll hear from you. Well, I agree that the sole issue is whether the district court abused its discretion in admitting as an excited utterance the statement of the victim. Which was made about 30 minutes after the incident. And there was no abuse of discretion because the district court had a very good factual record in front of her. Him, Judge Frank, in front of him, that the victim, LK, was extremely upset 30 minutes after the incident. This was an incident where she'd been assaulted. The defendant had pointed a gun at her, threatened to kill her. He had then fired off five shots as he was leaving the residence from his loaded shotgun, which is probably what alerted the neighbor to immediately call 911. And the police showed up just 30 minutes later, knocked on the door, the victim came to the door. She was visibly distraught, had been crying, was shaking uncontrollably, in the words of the responding officer, Officer Lyons. This case is controlled in the government's view by Broon. I won't restate the facts, they're obviously very factually similar. But our case is even stronger than the Broon case. Because a counsel's point is there should not be any time for reflection. In Broon, it was the victim who called the police, and then there was a ten minute gap before the police showed up. So that victim knew she was going to be giving a statement to a police officer momentarily. She had time, if she had the motive, she had time to come up with something to falsely accuse. In this case, our victim did not call the police, and did not know that anyone had called the police. When the policeman shows up unexpectedly, unannounced, 30 minutes later, she has zero time to fabricate, because she doesn't know anybody's coming. And to answer your question, Judge Kelly, how long did it take in this first recitation? Three minutes. And the officer testified that he wasn't interrogating her. He simply said, what's going on here? And she was emotionally distraught, and she started blurting out all this information. He was not questioning her. In fact, he was still trying to make sure that the scene was safe. He was doing a protective sweep of the house. And she was just voluntarily stating that my boyfriend came, he pointed the gun at me, kicked in the door, pointed the gun at me, threatened to kill me, shot off the gun, and left in a gold Cadillac. And that was all within three minutes. Why not consider her explanation for her sort of state of mind? I think the district court said, well, even if I . . . correct me if I'm wrong, but I think the district court said, well, even if I considered it, heard it, it wouldn't change my mind about my ruling on the excited utterance. But why not consider that as well? Do you think that was an error? I don't think it was an error. I think he did consider it. What you're asking, really, is why didn't he put her on the stand? Then there was no requirement for him to put her on the stand. He didn't have to listen to Officer Lyons live either. All these cases that we've cited, Broon and the Lutzen case and so forth, there was never an evidentiary hearing. As far as I can tell, here, the judge gave an evidentiary hearing. He wasn't required to under Rule 104. These decisions normally are made on proffers and briefs and oral argument all the time. Judge Frank went beyond that because he's very careful. And he heard from Officer Lyons. And then, and only then, did the other side say, well, we want the victim to testify too. This is what she'll say. And everybody agreed this is what she'll say. And that proffer of her testimony can be found in the transcript of the evidentiary hearing at page 25. And four pages later, at page 29, Judge Frank says, well, I accept that proffer. And even if she were to come in and say what she says, my ruling would be the same. And why? Because, reading between the lines, he probably was thinking that, I know now that this victim has reconciled with the defendant. She's about to have his baby. They're back together. I understand why she might now say something different than before. And in my mind, even if she says that, it's not going to affect my decision. Judge Shepard, you were on the Lutzen, Brunsting versus Lutzen case, where, interestingly, Judge Kyle had kept out an excited utterance. And this court reversed and said it ought to come in, thereby suggesting that the excited utterance exception is maybe broader than defense counsel would like. Judge Shepard, you dissented, but not because you thought the decision to reverse was wrong. You thought the court should have deferred to the discretion of Judge Kyle. In other words, as you said, when a judge has evidence, even if it's conflicting, we trust trial judges to make these decisions on preliminary questions of admissibility. And you thought the court should defer to Judge Kyle in that case. I suggest that this court should defer to Judge Frank in this case, because he got to see the live testimony. Now, the judge says in his ruling that there was a continuous level of stress for this witness in the 35 minutes, as I read his ruling at page 30 of the transcript. Ms. Menendez says, well, she maybe didn't go to sleep, but she was quiet in the bedroom and reflecting. What's your view of the record about what happened in this period between the incident and the arrival of the officer? Well, my view is that although there was no witness who could say what she was doing, no outside witness who could say what she was doing during that 30 minutes, that's typically the case in these cases. I disagree with Ms. Menendez that there has to be a finding of continuous excitement. I don't see that condition or that factor required in any of the cases. In fact- But I mean, the judge said there was a continuous level. And he was- He referred to, quote, the continuous level of her stress. Is that supported by the record? Well, I think what he says is what I will permit to the extent I find as follows. The rapid fire response by Ms. Kingbird was not the result of interrogation. When I look at the continuous level of her stress, even in 35 minutes, the complete lack of time to reflect. I think what he's saying there, if he's referring to the continued level of stress for the entire 35 minutes, and it's a little ambiguous whether it's the 35 minutes or the three minutes she was talking to the officer, but assume it's the former, that can be inferred. Because, again, while there was nobody who was with her the entire 35 minutes, when the officer showed up, she came to the door and was already excited. I mean, it didn't take any- What's the basis for the notion that she went to the bedroom and was quiet for 30 minutes? Is that what she said? Or where does that come from? That's coming from the defense. I believe she said that after the fact. I don't believe she said it at the time. You think Kingbird said that in this proffer? Or, I mean, through this proffer? I guess we can look at the proffer. You say the proffer's at page 25, right? Yes. Okay. And what was said at page 25, it was actually, my co-counsel Ms. Onstead was summarizing what Ms. Kingbird said in the grand jury, and would now say at trial, she will indicate now that she was not afraid at the time of the incident. She will testify about everything that occurred, except the fact that the gun was pointed at her, and that she was afraid when the gun was pointed at her. Do you think there's enough evidence here to make any error harmless? Oh, definitely. Definitely. That's why I noted in a footnote that my colleague hardly even mentioned the excited utterance in her closing argument. She focused mainly on the defendant's own admissions, which, as I cited in my brief, were really all we needed. He admitted going there, kicking in the door, assaulting her in the bedroom, accusing her of being unfaithful, having a 10 to 15 minute argument, while he was brandishing this gun the entire time, and he admitted that at one point when he raised it and pointed it towards her, she had to push the barrel away. He admitted shooting off the gun while he was there, and with those admissions combined with the first responder's description of the victim's condition, how she was totally uncontrollably shaking and had been crying, that supplies the necessary element that the defendant's admitted conduct caused her to have fear. So even without the statement admitted as substantive evidence, there would have been enough. But of course, if it had been kept out as substantive evidence, it still would have come in for impeachment because we called the victim. Even knowing that she was going to recant, we called her, put her up there. She told her side of the story, and if it hadn't already come in as substantive evidence, it would have come in as impeachment for a limited purpose. But the point is, either way, the jury did or would have heard both of her versions of the story. Here, they did hear both versions. The version she told when she had no time to reflect, and the version she told months later after she'd reconciled with the defendant. And the verdict indicates that they believed the first version and the record supports that they should have. Okay, very well. Thank you for your argument. I think your time expired. I think we understand the case. So we'll consider it submitted and file an opinion in due course. Thank you very much.